**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ATHENS TECHNICAL SPECIALISTS INC.,**

**Plaintiff,** :

**v.**

**SEAN WHITE, *et al.*,**

**Defendants.** :

**Case No. 2:25-cv-1205**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

**OPINION AND ORDER**

Athens Technical Specialists Inc. ("ATSI") is a family-owned electronics manufacturer in Athens, Ohio. It sued Sean White and Rebecca White, Unmanned Wireless Systems, LLP ("UWS"), and Invictus Security, Inc. (collectively, "Defendants"). (Compl., ECF No. 1.) Defendants answered and brought four counterclaims. (Counterclaim, ECF No. 19.) ATSI now moves to dismiss Defendants' counterclaims. (Mot., ECF No. 23.) The Motion is fully briefed and ripe for the Court's review.

For the reasons below, the Motion is **GRANTED in part and DENIED in part**.

## I. FACTUAL BACKGROUND[1]

In or around 2000, Mr. White, a long-time employee of ATSI, developed a camera system that would capture images and transfer them wirelessly to a device

[1] This factual background is based on the allegations in Defendants' counterclaims. (*See generally* Counterclaim.) When considering ATSI's Motion, the Court views those allegations in the light most favorable to Defendants; the Court

on which the images could be accessed and reviewed. (Counterclaim, ¶ 11.) Two years later, ATSI began manufacturing and selling the system as the "BuckEye Cam." (*Id.*, ¶ 12.)

The BuckEye Cam was an instant success, and ATSI's revenues rapidly increased. (*Id.*, ¶¶ 13–14.) ATSI marketed the BuckEye Cam to hunters and other outdoor enthusiasts, as well as to various governmental agencies like the Department of Homeland Security and U.S. Customs and Border Protection. (*Id.*, ¶¶ 13, 15.)

ATSI and Mr. White soon began to explore ways to expand the BuckEye Cam's market. (*Id.*, ¶ 17.) They agreed that Mr. White would launch a new entity (UWS) to expand the BuckEye Cam's distribution channels and market value both nationally and internationally, particularly among public sector security and law-enforcement users. (*Id.*, ¶¶ 17–18.) In return, ATSI agreed to manufacture and sell BuckEye Cams to UWS. (*Id.*, ¶ 19.) According to Mr. White, the parties' "joint venture agreement" benefited both UWS and ATSI: UWS was compensated for developing and expanding the BuckEye Cam's network, and ATSI opened its doors to a previously unreachable market. (*Id.*, ¶ 20.)

But the parties' agreement came to a halt in October 2023, when, according to Mr. White, ATSI abruptly terminated its participation without excuse or justification and terminated Mr. and Mrs. White's employment. (*Id.*, ¶¶ 21, 23.) As

---

accepts the allegations as true and draws all reasonable inferences in their favor. *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

a result, UWS was left with approximately $12 million in pending sales that it could not fulfill. (*Id.*, ¶ 22.)

Nearly a year later, Mr. White formed a new camera technology-related company known as Invictus. (*Id.*, ¶ 25.) To prepare for its launch, Mr. White hired several engineers to develop a workable product for the company. (*Id.*, ¶¶ 28–29.) To date, Invictus has not sold any cameras to potential or prospective customers and is still working to develop a finished product. (*Id.*, ¶ 32.)

In October 2025, ATSI sued Mr. White, Mrs. White, UWS, and Invictus for, among other claims, theft of trade secrets. (*See generally* Compl.) In response, Defendants brought four counterclaims: (I) breach of contract; (II) breach of fiduciary duty; (III) tortious interference with prospective business relations; and (IV) abuse of process. (*See generally* Counterclaim.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

> unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Additionally, in reviewing such a motion a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

### A. Counterclaim I: Breach of Contract

Defendants claim ATSI breached the parties' Joint Venture Agreement and supply agreement.[2] (Counterclaim, ¶¶ 36–37.) ATSI argues there is no contract.

[2] In their counterclaim for breach of contract, Defendants allege there is a "Joint Venture Agreement and supply agreement." (Counterclaim, ¶ 36.) The name notwithstanding, the Court assumes that this allegation refers only to one agreement because Defendants have only pleaded the formation of one contract, not two. (*Id*., ¶¶ 17–22.)

(Mot., PAGEID # 595.) In the alternative, ATSI argues the statute of frauds bars any contract not expressed in writing. (*Id.*, PAGEID # 600.)

**1. Defendants have sufficiently alleged the existence of a contract.**

To prevail on a breach of contract claim, a claimant must "establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). As for the existence of a contract, Ohio recognizes both express and implied-in-fact contracts. *Stepp v. Freeman*, 694 N.E.2d 510, 513 (Ohio App. Ct. 1997). "In express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance." *Id.* at 514. "[I]n implied-in-fact contracts[,] the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." *Id.*

An express contract "can be verbal and may be enforceable provided there is 'sufficient particularity to form a binding contract.'" *Chuma v. Patterson*, 213 N.E.3d 747, 757 (Ohio App. Ct. 2023) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). "However, seldom, if ever, does the evidence establishing an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts." *Smith-Knabb v. Vesper*, 206 N.E.3d 1265, 1271 (Ohio App. Ct. 2023). "Rather, the goal in enforcing oral contracts is to hold people to the promises they make." *Id.*

Defendants have sufficiently pleaded that an express oral contract exists. Defendants allege ATSI and Mr. White agreed that Mr. White would form UWS, a new entity devoted to expanding the market for the BuckEye Cam. (Counterclaim, ¶ 17.) As part of the agreement, UWS would develop and expand the BuckEye Cam's national and international presence in exchange for ATSI selling BuckEye Cams directly to UWS. (*Id.*, ¶¶ 18–19.)

Even absent an express oral contract, Defendants' allegations suggest there was a contract implied in fact. "To establish a contract implied in fact[,] a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended." *Stepp*, 694 N.E.2d at 514. Here, after being employed with ATSI for years, Mr. White formed UWS to expand the BuckEye Cam's national and international market. (Counterclaim, ¶ 18.) In return, ATSI sold BuckEye Cams to UWS for resale in those markets. (*Id.*, ¶ 19.) Both parties benefited as a result. (*Id.*, ¶ 20.) Based on these facts, the Court can infer that UWS and ATSI appreciated that "a contract existed as a matter of tacit understanding." *Stepp*, 694 N.E.2d at 514.

As for performance, breach, and damages, Defendants allege they were compensated for developing and expanding ATSI's sales network, yet ATSI abruptly ended its participation without excuse or justification and terminated Mr. and Mrs. White, and UWS was left with $12 million in pending sales that went unfulfilled. (*Id.*, ¶¶ 20–23.) Thus, Defendants have pleaded a breach of contract counterclaim.

**2. The statute of frauds does not apply.**

Assuming an oral contract exists, ATSI next argues the oral contract is void under the statute of frauds. (Mot., PAGEID # 600.) "The purpose of the statute of frauds is to prevent 'frauds and perjuries.'" *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 909 N.E.2d 93, 99 (Ohio 2009) (citation omitted). Where applicable, the statute of frauds "requires that an enforceable contract be in writing and signed by the party to be charged[.]" *Id.* at 100. One such place it applies is "to agreements that cannot be performed within a year." *Id.* at 98 (citing Ohio Rev. Code § 1335.05).

ATSI argues the alleged agreement "would have lasted multiple years." (Mot., PAGEID # 600.) But Defendants did not plead any facts to suggest that is the case. Nor is there any implication that the agreement could not have been performed within a year. The Court will not dismiss the breach of contract counterclaim based on the statute of frauds.

ATSI's Motion as to Counterclaim I is **DENIED**.

**B. Counterclaim II: Breach of Fiduciary Duty**

To state a claim for breach of fiduciary duty, the plaintiff must plead "the existence of a duty arising from a fiduciary relationship[.]" *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 889 N.E.2d 1066, 1076 (Ohio App. Ct. 2008). One example of a fiduciary relationship is found when parties enter a joint venture. *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent and Awning Co.*, 233 F. Supp. 2d 934, 946 (S.D. Ohio 2002) (Sargus, J.) ("Parties engaged in [a joint venture] owe each other fiduciary duties.").

ATSI argues it never entered a joint venture with Defendants, and thus, there was no fiduciary relationship. (Mot., PAGEID # 602.) In response, Defendants argue they formed a joint venture with ATSI based on the "Joint Venture Agreement." (Resp., ECF No. 24, PAGEID # 615.) But that Defendants call the contract a "Joint Venture Agreement" does not make it so. (Counterclaim, ¶ 36.) Rather, a joint venture requires four elements: "(1) a joint contract, either express or implied, to engage in a specific business enterprise; (2) an intention to associate as joint venturers; (3) a community of interest and joint control; and (4) an agreement to share jointly and severally in profits and losses." *Howard, Administrator of the Estate of Sean David Howard, Sr. v. Szozda*, 224 N.E.3d 1259, 1262 (Ohio App. Ct. 2023). Here, Defendants have only pleaded that a contract was formed and have ignored the remaining three elements. "[A] contractual relationship alone does not automatically give rise to a fiduciary relationship." *Miller by and through Miller v. Allianz Life Ins. Co. of N. Am.*, No. 5:20-CV-00930, 2020 WL 5653548, *5 (N.D. Ohio Sept. 23, 2020). So, without a joint venture or any attempt to identify another fiduciary relationship, Defendants have failed to plead that ATSI owed a fiduciary duty.

Accordingly, Counterclaim II is **DISMISSED**.

### C. Counterclaim III: Tortious Interference with Prospective Business Relations

To state a claim for tortious interference with business relations, a plaintiff must allege: "(1) the existence of a business relationship, (2) the defendant's knowledge of the business relationship, (3) the defendant's intentional action to

prevent a contract formation or terminate a business relationship, (4) lack of justification, and (5) resulting damages." *Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin. Servs.*, 239 N.E.3d 942, 952 (Ohio App. Ct. 2024). ATSI argues Defendants' claim fails because they did not plead a business relationship. (Mot., PAGEID # 603.)

According to Defendants, they have "[p]rospective business relationships" with "governmental agencies and departments" and "private third parties[.]" (Counterclaim, ¶ 45.) But Defendants do not identify those governmental agencies or third parties and even admit they have "not sold any cameras to potential or prospective customers … [and] there is not even a finished product." (*Id.*, ¶ 32.) Such "[a] vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021) (citation omitted); *see also Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (holding a "vague assertion of interference" with "certain unspecified business relationships" is "just a 'legal conclusion' that is entitled to no weight").

Accordingly, Counterclaim III is **DISMISSED**.

### D. Counterclaim IV: Abuse of Process

To state a claim for abuse of process, a plaintiff must show: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9,

14 (Ohio 1996) (citation omitted). ATSI argues Defendants' abuse of process claim fails on the second element. (Mot., PAGEID # 605.)

"[T]he ulterior purpose for the proceeding must have been to obtain something that the court in the normal course of the proceedings could not order." *Alabsi v. City of Cleveland*, No. 22-3375, 2023 WL 334893, *4 (6th Cir. Jan. 20, 2023). An ulterior purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as threat or a club." *Robb*, 662 N.E.2d at 14 (citation omitted).

Defendants argue ATSI's ulterior purpose is to "restrain[ ] fair and free-market competition" (Counterclaim, ¶ 55) by "quash[ing Defendants'] business before it even gets off of the ground" (Resp., PAGEID # 618). However, that Defendants' business could be adversely impacted if ATSI is successful in its lawsuit is a consequence of litigation, not an ulterior purpose. Defendants have not pleaded any facts to suggest that ATSI is more interested in ruining Defendants' business than it is in protecting its own interests and trade secrets. Potential adverse consequences because of ATSI's claims do not suggest, standing alone, that ATSI's ulterior purpose is to reach that result. And even if ATSI was motivated by a desire to quash Defendants' business, a malicious motive alone is not abuse of process. *See Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1010 (S.D. Ohio 2002) (Sargus, J.) ("If one uses process properly, but with a malicious motive, there is no abuse of process.").

Accordingly, Counterclaim IV is **DISMISSED**.

## IV. CONCLUSION

For the above reasons, ATSI's Motion to Dismiss (ECF No. 23) is **GRANTED in part and DENIED in part**. Defendants' Counterclaims II, III, and IV are **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**